Kevin T. Lafky, OSB #85263
klafky@lafky.com
R. Grant Cook, OSB #062064
gcook@lafky.com
LAFKY & LAFKY
429 Court Street NE
Salem, OR 97301
Tel: (503)585-2450
Fax: (503)585-0205
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HOWARD GROBSTEIN,** as Chapter 7 Bankruptcy Trusttee for**, BLANCA AGUIRRE**, | Case No. 3:18-cv-01916-YY |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | Negligence; Battery; Assault; Violations of 42 USC §1983; False Arrest; Defamation |
|  | Claim Amount: $600,000 |
| **PORT OF PORTLAND**, a Municipal Corporation, **THOMAS T. KO**, an individual, **JEREMY HEPP**, an individual, **JACOB CASSITY**, an individual, **JERRY SALDIVAR**, an individual, **POLLIN HOTELS II, LLC**, an Oregon limited liability company, doing business as SHERATON PORTLAND AIRPORT HOTEL, **STARWOOD HOTELS & RESORTS WORLDWIDE, LLC**, a foreign limited liability company and **CANTERBURY HOTEL GROUP,** an Oregon company, doing business as **FOUR POINTS BY SHERATON PORTLAND EAST,** | Jury Trial Requested |
| Defendants. | |

**PAGE 1–FIRST AMENDED COMPLAINT**

Plaintiff alleges at all material times hereto:

1.

Howard Grobstein, is the Chapter 7 Bankruptcy for Blanca Aguirre. Blanca Aguirre ("Plaintiff") was a resident of California and traveling through Portland, Oregon on or about October 25, 2017.

2.

Defendant Port of Portland ("the Port") is a port district and municipal corporation of the State of Oregon with its principal place of business in the City of Portland, Multnomah County, Oregon.

3.

The Port owns and operates the Portland International Airport, located at 7000 NE Airport Way, in Portland, Multnomah County, Oregon, as well as the Port of Portland police.

4.

Defendant Thomas T. Ko ("Officer Ko") was an employee of the Port of Portland police and acting as a law enforcement officer within the scope of his employment/agency and acting under color of law.

5.

Defendant Jeremy Hepp ("Sergeant Hepp") was an employee of the Port of Portland police and acting as a law enforcement officer within the scope of his employment/agency and acting under color of law.

6.

Defendant Jacob Cassity ("Officer Cassity") was an employee of the Port of Portland police and acting as a law enforcement officer within the scope of his employment/agency and

**PAGE 2–FIRST AMENDED COMPLAINT**

acting under color of law.

7.

Defendant Jerry Saldivar ("Officer Saldivar") was an employee of the Port of Portland police and acting as a law enforcement officer within the scope of his employment/agency and acting under color of law.

8.

Defendant Pollin Hotels II, LLC, is an Oregon limited liability company, doing business as Sheraton Portland Airport Hotel located at 8235 NE Airport Way in Portland, Oregon ("PDX Sheraton").

9.

Defendant Canterbury Hotel Group, is an Oregon company, doing business as Four Points by Sheraton Portland East located at 1919 NE 181st Avenue, Portland, Oregon 97230 ("Four Points Sheraton").

10.

Defendant Starwood Hotels & Resorts Worldwide, LLC, is a foreign limited liability company, licensed to operate in the State of Oregon ("Starwood").

11.

Plaintiff's complaint was originally filed in Multnomah County Circuit Court and removed to this Court by the Port and without objection from Plaintiff.

12.

Plaintiff is a Hispanic female of slight build whose first language is Spanish.  Plaintiff has no criminal convictions and, until the incidents described herein, has never been arrested. Plaintiff does not use drugs or alcohol and was not under the influence of either during the

**PAGE 3–FIRST AMENDED COMPLAINT**

incidents described herein.  Plaintiff presents as a respectable and law-abiding citizen.

13.

On or about October 24, 2017, late in the evening, Plaintiff was at the Portland International Airport and missed her flight *en route* to her home in Palm Springs, California. Alternate flights were unavailable and it was late in the day. Plaintiff searched for nearby hotels and reserved a room at a Sheraton Hotel, reservation confirmation number 772273582.

14.

Starwood , a booking agent for Four Points Sheraton spoke with Plaintiff and assisted her with booking a room at a hotel. Plaintiff received an emailed confirmation of her reservation.

15.

Plaintiff then waited for, and ultimately boarded, a Sheraton shuttle (the "shuttle").  The shuttle's first and final stop was at PDX Sheraton.  Everybody got off the shuttle, except for Plaintiff.  The shuttle driver asked Plaintiff where she was headed.  Plaintiff told the driver that her destination was Four Points Sheraton.  The driver asked whether Plaintiff had a reservation at Four Points Sheraton and Plaintiff confirmed that she did.  The shuttle driver placed a call by speaker phone and the voice on the other end of the call stated they did not have a record of Plaintiff's reservation at Four Points Sheraton.  Plaintiff showed the shuttle driver the hotel confirmation number on her cell phone.  Despite the confirmation number, the shuttle driver was unable to confirm Plaintiff's reservation.  Plaintiff alighted from the shuttle and entered the PDX Sheraton where the shuttle was parked.

16.

Inside PDX Sheraton's lobby, Plaintiff approached the concierge desk and spoke with an employee, Michael Tate.  By then, Plaintiff was able to get a reservation customer service agent,

**PAGE 4–FIRST AMENDED COMPLAINT**

"Maria", back on the telephone and asked that Maria speak with Mr. Tate. Maria agreed to talk to Mr. Tate, so Plaintiff attempted to plug her cell phone charger into an outlet next to the concierge desk while handing the telephone to Mr. Tate so he could speak with Maria regarding the reservation.

17.

As Plaintiff went to plug her charger into the outlet, Mr. Tate suddenly and violently reacted and began yelling at Plaintiff. Mr. Tate was gesticulating in such a manner that Plaintiff feared for her safety. Plaintiff was shocked by this behavior and asked Maria (who was still on the telephone) to call the police. Maria stated that she was unable to do so; however, the police were still called and very shortly afterward arrived at PDX Sheraton.

18.

Officer Ko, Officer Cassity, Officer Saldivar and Sergeant Hepp (collectively "the Officers") entered the hotel lobby and began to shout at Plaintiff and told her to get off the phone. Plaintiff hung up the phone and attempted to present her identification when the Officers immediately, and without provocation, tackled Plaintiff to the ground. When the Officers forced Plaintiff's body to the ground, they caused her head, face, arm, and leg to impact the ground forcefully. The Officers remained on top of Plaintiff and kept her in a painful hold. While Plaintiff was on the ground, she pled for help to indifferent officers, hotel staff, and third parties.

19.

The Officers then roughly picked up Plaintiff's body, pulled her outside, and threw her into the back of a patrol car. The Officers did not read Plaintiff her *Miranda* rights nor did they inform her of any charges against her. The Officers also excessively tightened the handcuffs on Plaintiff to the point that they were digging into her wrists and causing Plaintiff pain and

**PAGE 5–FIRST AMENDED COMPLAINT**

numbness. While in the back of the patrol car, Plaintiff was confused, crying, and having trouble breathing. She asked one of the Officers for water, to which the officer responded, "You're not getting nothing." While waiting in the patrol car, terrified, and in pain, Plaintiff watched as the Officers chatted and laughed with PDX Sheraton employees. When one of the Officers returned to the patrol car, he said, "Guess what? I'm reading you your rights." Plaintiff asked, "Why?," and the officer responded that she was being charged with "Harassment."

20.

At some point, Plaintiff spoke with a Spanish speaking officer, and asked, in Spanish, "Why did they attack me?" The officer responded with only a shrug.

21.

The Officers transported Plaintiff to the Port of Portland police station where she complained of the pain and injuries that resulted from the handcuffs being too tight. Plaintiff asked the Port for a doctor or nurse and an officer's response was, "Why?" Plaintiff explained that several officers had physically attacked her, that they injured her, and that she thought the Officers wanted to kill her.

22.

Plaintiff attempted to lodge a complaint with Sgt. D. Stockbridge ("Sgt. Stockbridge"), but Sgt. Stockbridge refused to issue a complaint file or number to Plaintiff. When Sgt. Stockbridge asked why she should believe Plaintiff, Plaintiff showed Sgt. Stockbridge her injuries. Sgt. Stockbridge replied that she still did not believe her. Plaintiff pleaded with Sgt. Stockbridge to review the video of the incident, but Sgt. Stockbridge's response was simply that she would refer the matter to her supervisors and, "they would decide what to do." Port employees also told Plaintiff that she should not contact the District Attorney because, "they

**PAGE 6–FIRST AMENDED COMPLAINT**

won't do anything for you."

23.

A nurse finally came to see Plaintiff.  Plaintiff told the nurse that several officers had attacked her.  The nurse replied, "You can't say that."  The nurse superficially treated Plaintiff's wounds.  The Port booked and released Plaintiff in the early hours of the morning with a standard release agreement.  The Multnomah County Sheriff's Office ("MCSO") issued a property/money ledger and payment in the form of a check to Plaintiff in the amount of $2,233.60 (the amount of cash seized from her), which she was unable to access due to the time of day.  Plaintiff called an ambulance and informed the EMT staff of the officers' attack on her during her transport.

24.

Multnomah County Health Department, Corrections Health staff, noted on a Pre-Booking Reception Emergency Response Record, at approximately 2:00 a.m., that Plaintiff complained of injury to her head and right shoulder.

25.

Plaintiff presented to the Emergency Department at Oregon Health & Science University ("OHSU"), where she underwent a CT scan of the cranium and was treated for head injury and concussion, lumbosacral strain, thoracic strain, and shoulder sprain.  Plaintiff had visible injuries to her head, neck, face, chest, shoulder, arm, leg, foot, and ankle.  On her release from OHSU, Plaintiff made arrangements to travel back to Palm Springs and documented the events described herein.

26.

By letter of November 20, 2017, counsel for Plaintiff contacted Multnomah County Deputy District Attorney, Sean Hughey ("DDA Hughey"), and requested that the State dismiss

**PAGE 7–FIRST AMENDED COMPLAINT**

the charges against Plaintiff and that the State open an investigation into the conduct of the arresting officers, the Officers. As of the date of this complaint, Plaintiff does not know whether the State initiated an investigation.

27.

At the outset of the case charging Plaintiff with a crime, Multnomah County Circuit Case No. C17-CR-74639, the District Attorney declined to prosecute the "harassment" charge and ultimately moved to dismiss the "interfering with a police officer" charge "in the interest of justice." The court dismissed the charge and the case against Plaintiff was closed on January 5, 2018, without further action.

28.

As a result of the Officers' assault and use of excessive force on Plaintiff, Plaintiff has had to seek and receive treatment for the injuries referenced herein, including her right arm, shoulder, chest, and back. Plaintiff has also sought and received counseling for the emotional trauma she experienced.

29.

Since the events alleged herein, Plaintiff has also experienced extreme post-traumatic fear and panic. Plaintiff has not driven since the incident out of fear and anxiety caused by the incidents described herein. As a result of the incidents described herein, Plaintiff has lost work and income, and she continues to suffer pain, loss of sleep, and interruption to her normal daily activities.

TORT CLAIM NOTICE

30.

Pursuant to ORS 30.275, Plaintiff timely served a written Tort Claim Notice of her claims

**PAGE 8–FIRST AMENDED COMPLAINT**

upon Defendant Port of Portland.

FIRST CLAIM FOR RELIEF - AGAINST PORT OF PORTLAND

(Negligence)

31.

Plaintiff re-alleges and incorporates paragraphs 1 through 30 herein.

32.

Defendant Port of Portland, by and through its employees and/or agents acting under color of law, had a duty to avoid unnecessary harm to the persons they are sworn to protect. Defendants failed to use the degree of care and judgment that would have been used by reasonably careful officers to avoid harming someone when Defendant Port of Portland's employee(s)/agent(s) suddenly, and without warning, tackled, knocked over, and forcefully restrained Plaintiff with violence and force sufficient to cause injury severe enough to require immediate and continued medical treatment.

33.

As a direct, proximate and foreseeable result of Defendants' negligent conduct, as described in the paragraphs above, Plaintiff incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000 in the form of pain, mental suffering, emotional duress, humiliation, severe inconvenience, and substantial interference with her activities of daily living.

SECOND CLAIM FOR RELIEF - AGAINST PORT OF PORTLAND

(Battery)

34.

Plaintiff re-alleges and incorporates paragraphs 1 through 33 herein.

**PAGE 9–FIRST AMENDED COMPLAINT**

35.

Defendant Port of Portland, by and through its employees and/or agents acting under color of law, intentionally caused harmful and offensive contact to Plaintiff when they applied substantially more physical force to Plaintiff's body than reasonably necessary to arrest or detain Plaintiff.

36.

As a direct and proximate result of Defendants' tortious conduct, as described in the paragraphs above, Plaintiff incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000 in the form of pain, mental suffering, emotional duress, humiliation, severe inconvenience, and substantial interference with her activities of daily living.

THIRD CLAIM FOR RELIEF - AGAINST PORT OF PORTLAND

(Assault)

37.

Plaintiff re-alleges and incorporates paragraphs 1 through 36 herein.

38.

Defendant Port of Portland, by and through its employees and/or agents acting under color of law, caused Plaintiff to reasonably fear imminent harmful or offensive physical contact with Plaintiff's person when they engaged in the conduct described in the paragraphs above.

39.

As a direct and proximate result of Defendants' tortious conduct, as described in the paragraphs above, Plaintiff incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000

**PAGE 10–FIRST AMENDED COMPLAINT**

in the form of pain, mental suffering, emotional duress, humiliation, severe inconvenience, and substantial interference with her activities of daily living.

### FOURTH CLAIM FOR RELIEF - AGAINST PORT OF PORTLAND

(Count 1 - False Arrest)

40.

Plaintiff re-alleges and incorporates paragraphs 1 through 39 herein.

41.

Defendant Port of Portland, by and through its employees and/or agents acting under color of law, intentionally and without facts sufficient to cause a reasonable person to believe that Plaintiff committed a crime, restrained Plaintiff's liberty when they tackled her, held her to the ground, handcuffed her, and placed her in a locked patrol car.

42.

As a direct, proximate and foreseeable result of Defendants' tortious conduct, as described in the paragraphs above, Plaintiff incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000 in the form of pain, mental suffering, emotional duress, humiliation, severe inconvenience, and substantial interference with her activities of daily living.

(Count 2 - Negligent False Arrest)

43.

Plaintiff re-alleges and incorporates paragraphs 1 through 42 herein.

44.

Defendant Port of Portland, by and through its employees and/or agents acting under color of law, had a duty to conduct a reasonable investigation and to have facts sufficient to cause

**PAGE 11–FIRST AMENDED COMPLAINT**

a reasonable person to believe that Plaintiff committed a crime prior to arresting Plaintiff. Defendant breached that duty when its officers tackled Plaintiff, held her to the ground, handcuffed her, and placed her in a locked patrol car without probable cause or a substantial objective basis to believe that Plaintiff committed a crime, as described in the paragraphs above.

45.

As a direct, proximate and foreseeable result of Defendants' tortious conduct, as described in the paragraphs above, Plaintiff incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000 in the form of pain, mental suffering, emotional duress, humiliation, severe inconvenience, and substantial interference with her activities of daily living.

## FIFTH, SIXTH, SEVENTH, AND EIGHTH CLAIMS FOR RELIEF - AGAINST OFFICERS THOMAS T. KO, JACOB CASSITY, JERRY SALDIVAR, AND SERGEANT JEREMY HEPP

(42 USC §1983 – Fourth Amendment)

46.

Plaintiff re-alleges and incorporates paragraphs 1 through 45 herein. Pursuant to 42 U.S.C. § 1983, any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....". At all times material hereto, Defendant acted or purported to act under color of law, statutes, ordinances, regulations, or customs.

47.

Plaintiff has a Fourth Amendment right to be secure in her person from unreasonable

seizure.  Officer Ko, Cassity, Saldivar and Sergeant Hepp, acting under color of law, violated Plaintiff's right to be free from unreasonable seizure when they restrained Plaintiff of her personal freedom and ability to move about freely when said seizure was objectively unreasonable in light of the facts and circumstances, as described in the paragraphs above.

48.

As a direct, proximate and foreseeable result of all claims for relief alleged herein, Plaintiff incurred economic damages in the amount of $100,000, and non-economic damages in the form of pain, mental suffering, emotional duress, humiliation, severe inconvenience, and substantial interference with her activities of daily living in the amount of $500,000.  Plaintiff demands her attorney fees, costs, and disbursements pursuant to 42 USC § 1988.

NINTH CLAIM FOR RELIEF - AGAINST DEFENDANT PDX SHERATON

(Assault)

49.

Plaintiff re-alleges and incorporates paragraphs 1 through 48 herein.

50.

Defendant PDX Sheraton, by and through its employees and/or agents, caused Plaintiff to reasonably fear imminent harmful or offensive physical contact with Plaintiff's person when they engaged in the conduct described in the paragraphs above.

51.

As a direct and proximate result of Defendants' tortious conduct, as described in the paragraphs above, Plaintiff incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000 in the form of pain, mental suffering, emotional duress, humiliation, severe inconvenience, and

**PAGE 13–FIRST AMENDED COMPLAINT**

substantial interference with her activities of daily living.

## TENTH CLAIM FOR RELIEF- AGAINST DEFENDANT PDX SHERATON

(Defamation)

52.

Plaintiff re-alleges and incorporates paragraphs 1 through 51 herein.

53.

Michael Tate, while acting within the scope of his employment with Defendant PDX Sheraton, made false and defamatory statements concerning Plaintiff to the Officers. The statements made by Mr. Tate to the Officers had the tendency to injure Plaintiff because the statements indicated that Plaintiff had committed a crime by allegedly harassing the hotel staff.

54.

Upon information and belief, the Officers understood that the statements were about Plaintiff as the statements were made of, concerning, and mentioned Plaintiff expressly. The statements made by Mr. Tate were entirely false and defamatory and exposed Plaintiff to arrest and ultimately, physical injury by the police.

55.

As a direct and proximate result of Mr. Tate's defamatory publication, as described in the paragraphs above, Plaintiff has incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000 in the form of pain, mental suffering, emotional distress, humiliation, severe inconvenience, and substantial interference with her activities of daily living.

## ELEVENTH CLAIM FOR RELIEF - AGAINST DEFENDANT FOUR POINTS SHERATON

(Assault)

**PAGE 14–FIRST AMENDED COMPLAINT**

56.

Plaintiff re-alleges and incorporates paragraphs 1 through 55 herein.

57.

Defendant Four Points Sheraton, by and through its employees and/or agents, caused Plaintiff to reasonably fear imminent harmful or offensive physical contact with Plaintiff's person when they engaged in the conduct described in the paragraphs above.

58.

As a direct and proximate result of Defendant's tortious conduct, as described in the paragraphs above, Plaintiff has incurred economic damages in the amount of $100,000 in the form of medical bills and lost income, and non-economic damages in an amount not to exceed $500,000 in the form of pain, mental suffering, emotional distress, humiliation, severe inconvenience, and substantial interference with her activities of daily living.

WHEREFORE, Plaintiff requests the following for her claims for relief:

1. Economic damages in the amount of $100,000;

2. Non-economic damages in the amount of $500,000;

3. Any other relief this Court deems just and equitable.

4. Reasonable attorney fees, costs, and disbursements pursuant to 42 U.S.C. § 1988 for Plaintiff's Fifth, Sixth, Seventh, and Eighth Claims.

DATED this 19th day of July, 2019.

    s/R Grant Cook
R. Grant Cook, OSB#062064
gcook@lafky.com
LAFKY & LAFKY
Attorney's for Plaintiff

**PAGE 15–FIRST AMENDED COMPLAINT**