UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

HOWARD GROBSTEIN, as Chapter 7 Bankruptcy
Trustee for, BLANCA AGUIRRE,

                    Plaintiff,

       v.

PORT OF PORTLAND, a Municipal Corporation,
THOMAS T. KO, an individual, JEREMY HEPP,
an individual, JACOB CASSITY, an individual,
JERRY SALDIVAR, an individual, and POLLIN
HOTELS II, LLC, an Oregon limited liability
company, doing business as SHERATON
PORTLAND AIRPORT HOTEL,

                  Defendants.

Case No. 3:18-cv-01916-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

     Plaintiff has brought suit against defendants for their actions surrounding her arrest at a

Portland airport hotel in the early morning hours of October 25, 2017.  She alleges a Fourth

Amendment violation pursuant to 42 U.S.C. § 1983 against the officers, Sergeant Thomas Ko,

Sergeant Jeremy Hepp, Officer Cassity, and Officer Saldivar, common law claims of negligence,

battery, assault, and false arrest against defendant Port of Portland ("Port"), and claims of assault

and defamation against Pollin Hotels II, LLC, dba Sheraton Portland Airport Hotel.

     This court has original jurisdiction over the § 1983 claim pursuant to 28 U.S.C. § 1331

and supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

Defendants have each moved for summary judgment.  ECF 28, 34.  For the reasons discussed below, the motions should be granted in part and denied in part.

## I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).  "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party."  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.    Motion to Strike

The Port defendants move to strike paragraph 12 of plaintiff's declaration on the basis that it contains hearsay.  Port Reply 2, ECF 49.  In paragraph 12, plaintiff states:

> I was transported to Oregon Health and Science University in Portland where I was diagnosed with a concussion and bruises on my arm, face, shoulder, arm, leg, and ankle. I had imaging completed, but it did not show any structural damage.

Pl. Decl. ¶ 12, ECF 39.

No medical records have been offered on summary judgment.  Thus, to the extent plaintiff attempts to testify about a medical diagnosis that was told to her by a medical professional, it is hearsay.  *See*, *e.g.*, *Kumar v. Alameda Cty. Med. Ctr.*, No. 09-4312 EDL, 2011 WL 13244636, at *1 (N.D. Cal. Mar. 25, 2011) (finding what doctor told him is "inadmissible hearsay").  Also, as a lay witness, plaintiff is "incompetent to testify as to the existence . . . of [medical] illnesses."  *Heit v. Aerotek, Inc.*, 726 F. App'x 648, 649 (9th Cir. 2018) (quoting *Frisone v. United States*, 270 F.2d 401, 403 (9th Cir. 1959) (citations omitted)) (cited pursuant to Ninth Circuit Rule 36-3).  However, plaintiff's testimony regarding her bruising is admissible because that type of testimony falls within the parameters of lay witness testimony and is based on plaintiff's personal knowledge.

### III.    Claims Against Port of Portland For Negligence (First Claim) and Negligent False Arrest (Fourth Claim, Count 2)

Plaintiff concedes that her claims for negligence and negligent false arrest against the Port should be dismissed.  Resp. Port Mot. Summ. J. 6, ECF 41.  Accordingly, summary judgment should be granted as to those claims.

### IV.    Port of Portland's Motion for Summary Judgment (ECF 28)

The court first considers the Port defendants' motion as to plaintiff's federal claims, then evaluates her state common law claims.

### A.    § 1983 Claim: Fourth Amendment (Fifth, Sixth, Seventh, and Eighth Claims)

Plaintiff alleges that the officers violated her "Fourth Amendment right to be secure in her person from unreasonable seizure . . . when they restrained [her] of her personal freedom and ability to move about freely."  First Am. Compl. ¶ 47, ECF 7.  Plaintiff asserts both unlawful arrest and excessive force claims.  Because the officers had probable cause to arrest plaintiff, her unlawful arrest claim fails.  However, her claim for excessive force survives summary judgment.

3 – FINDINGS AND RECOMMENDATIONS

### 1.    Relevant Law Regarding Qualified Immunity

The officers assert they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231).

"Qualified immunity shields an officer from liability even if his or her action resulted from 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Pearson*, 555 U.S. at 231). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986)).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Courts may exercise their discretion in deciding which prong to address first, "as they are in the best position to determine

the order of decision making that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 242.

"The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe Cty.,* 663 F.3d 1071, 1075 (9th Cir. 2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 639.

The "'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).  "For a right to be 'clearly established,' existing 'precedent must have placed the statutory or constitutional question *beyond debate*,' such that 'every' reasonable official, not just 'a' reasonable official, would have understood that he was violating a clearly established right." *Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "'[I]t is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness [of the defendants' actions] was apparent in light of preexisting law.'" *Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002) (alterations in original) (quoting *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995)).  "Officers are entitled to qualified immunity unless they have been given fair notice that their conduct was unreasonable 'in light of the specific context of the case.'" *Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004)).  "[I]t will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [the court] can conclude that the law was clearly established on the basis of unpublished decisions only." *Sorrels*, 290 F.3d at

971. "[A] body of relevant case law is usually necessary to clearly establish the answer." *City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 504 (2019) (quoting *District of Columbia v. Wesby*, 138 S.Ct 577, 581 (2018)).

The Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes,* 138 S.Ct. 1148, 1152 (9th Cir. 2018) (internal quotation marks omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotations marks and citation omitted). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, [e.g.,] excessive force, will apply to the factual situation the officer confronts." *Id.* "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018). "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id*. (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 232 (citation omitted). Thus, the Supreme Court has "repeatedly stressed the importance

of resolving immunity questions at the earliest possible stage in litigation." *Hunter*, 502 U.S. at 227.

### 2.    Relevant Law Regarding Probable Cause

"It is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'" *Rosenbaum*, 663 F.3d at 1076 (quoting *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)). "An officer who makes an arrest without probable cause, however, may still be entitled to qualified immunity if he reasonably *believed* there to have been probable cause." *Id.* (emphasis in original).

"An officer has probable cause to make a warrantless arrest when the facts and circumstances within [the officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Id.*; *see also Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) ("[A] determination of reasonable suspicion or probable cause requires an inquiry as to the facts and circumstances within an officer's knowledge."). "The analysis involves both facts and law.  The facts are those that were known to the officer at the time of the arrest." *Rosenbaum*, 663 F.3d at 1076.  Also, "what the officer and claimant did or failed to do—is a determination of fact." *ActUp!/Portland*, 988 F.2d at 873.  If a genuine issue of fact exists, "the case must proceed to trial." *Id.*  But "where the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment." *Id.*  The "determination whether those facts support an objective belief that probable cause or reasonable suspicion existed is ordinarily a question for the court.  It is not in itself a factual issue that can preclude summary judgment." *Id.*  "[T]he question of whether a reasonable officer could have believed probable cause . . . existed to justify a search or arrest is 'an essentially legal question,' .

. . that should be determined by the district court at the earliest possible point in the litigation." *Id.* (citation omitted).

### 3.    Unlawful Arrest

While there are disputed facts as to some of the events that transpired in the early morning hours of October 25, 2017, there are no disputed facts regarding whether the officers had probable cause to arrest plaintiff based on the information they had at the time.

Plaintiff is a resident of California and was visiting the Portland area on business. Pl. Decl. ¶ 3, ECF 39; Pl. Dep. 28, ECF 29-1. She testified that she missed her flight at the Portland Airport and made a reservation to stay the night at Four Points Sheraton.[1] Pl. Decl. ¶ 3, ECF 39. She took the airport hotel shuttle and was let off at a different hotel, the Sheraton Portland Airport Hotel ("Sheraton PDX"), which was the last stop on the route. *Id.* ¶ 4. Plaintiff entered the Sheraton PDX lobby and asked Sean Tate, an employee, to help her with her reservation at Four Points Sheraton. *Id.* ¶ 5. Tate was unable to find a reservation for plaintiff at Four Points Sheraton, so plaintiff called the Sheraton reservation line. *Id.* ¶ 6. Because her cell phone was "going to die," plaintiff "plugged [it] into a nearby outlet." *Id.* ¶ 5.

Plaintiff spoke with a customer service representative, who confirmed her reservation at Four Point Sheraton, and then attempted to hand her cell phone to Tate so he could also speak with the customer service representative. *Id.* Plaintiff described that the plug on her cell phone was still attached to the phone because she had been charging it, and the plug fell to the ground when she handed the phone to Tate. *Id.* Plaintiff attempted to pick up the charger, and claims Tate "reacted in a violent and sudden manner." *Id.* According to plaintiff, Tate "threw my

---

[1] The Four Points by Sheraton Portland East is located at 1919 NE 181st. Ave. in Portland. Conner Decl., Ex. C, ECF 35-3.

phone and began to yell at me." *Id.* ¶ 7.  Plaintiff feared for her safety and asked the customer service representative to call the police on her behalf.  *Id.*  Plaintiff denies that she touched Tate inappropriately or did anything to place him in fear of physical bodily injury or harm.  *Id.*

According to plaintiff, a police officer arrived and told her to "get off the phone."  *Id.* ¶ 8. At first, plaintiff did not understand that the officer was talking with her, but then realized she was the only person in the lobby talking on a cell phone and informed the customer service representative that the police had arrived.  *Id.*  Plaintiff tried to "explain my situation to the officer, but was told several times to 'shut up.'"  *Id.* ¶ 9.  Plaintiff insists, "I never raised my voice at the police officer and attempted to explain myself several times with no success."  *Id.* She asserts she "never tried to leave the presence of the police officer during our conversation in the lobby."  *Id.*

Plaintiff contends that she placed her cell phone in her purse and "was immediately grabbed and slammed to the ground by two police officers with two other police officers helping."  *Id.* ¶ 10.  Plaintiff claims that she hit her head when she "was taken to the ground," which caused her to become disoriented.  *Id.*  She maintains that, while she was on the ground, she did not resist or struggle against the officers' efforts to arrest her.  *Id.*  She admits she said she "was a citizen" and was "going to take them to court."  *Id.*

Plaintiff describes that she was seen by a nurse at the police station, the nurse told her she needed to go to the hospital, and she was transported to the hospital by ambulance.  *Id.* ¶ 11. Plaintiff claims that she suffered bruises on her arm, face, shoulder, arm, leg, and ankle.  *Id.* ¶ 12. Plaintiff says she attempted to file a complaint the following morning, but a sergeant told her that the officers did not hurt her and made fun of her bruises.  *Id.* ¶ 13.

The officers tell a different story.  Defendant Sgt. Ko attests that he received a call from dispatch that a female subject at Sheraton PDX had grabbed a hotel clerk behind his desk and was irate.  Ko Decl. ¶ 3, ECF 30.  Sgt. Ko was the first person to arrive at the location and spoke with Tate.  *Id.* ¶ 4.  Tate described that he had been attempting to help plaintiff confirm her reservation at a different Sheraton hotel.  *Id.* ¶ 5.  He told Sgt. Ko that plaintiff came around his desk and put her arms around him, with her hands just above his belt line.  *Id.*  When Tate challenged plaintiff about her conduct, she shrugged off his objections and stated she was only charging her cell phone.  *Id.*  Sgt. Ko observed that Tate appeared shaken up.  *Id.*

Sgt. Ko then spoke with plaintiff who told him a rambling, disjointed story about missing her flight and needing to find a room for the night but not wanting to pay the Sheraton PDX room rate.  *Id.* ¶ 6; Ko Dep. 17, ECF 43-2.  Pursuant to investigation protocol, Sgt. Ko asked plaintiff for her identification, but plaintiff said she would not produce it until after she was done with her story and told Sgt. Ko that he was being rude to her.  Ko Decl. ¶ 7, ECF 30.  "As Sgt. Ko was attempting to interview [plaintiff], she became increasingly angry and uncooperative."  Cassity Decl. ¶ 5, ECF 32.  Plaintiff then picked up her handbag and said she was "leaving."  Ko Decl. ¶ 8, ECF 30.  Sgt. Ko told plaintiff to stop "but she grabbed her bag and began walking away."  *Id.*; *see also* Hepp Decl. ¶ 4, ECF 31 ("Ms. Aquirre ultimately announced that she was not going to give Sgt. Ko her identification and told us she was going to leave.  She began to grab her belongings.").

Sgt. Ko told plaintiff that she was under arrest and "grabbed her right hand as Sgt. Hepp grabbed her left hand."  Ko Decl. ¶ 8, ECF 30.  According to the officers, plaintiff "physically resisted our attempts to retrain her, and continued to squirm around making it very difficult to handcuff her."  *Id.*; *see also* Hepp Del. ¶ 5, ECF 31 ("She would not place her hands behind her

back and was actively trying to pull away from our hold."). After "concluding that [they] were not able to get [plaintiff] under control without taking additional measures," Sgt. Ko informed the other officers that they "needed to lower her to the ground to mitigate her movements." Ko Decl. ¶ 9, ECF 30. Sgt. Ko and Sgt. Hepp slowly lowered plaintiff to the ground, chest first, to "complete the cuffing process." *Id.* ¶ 11; Hepp Decl. ¶ 5, ECF 31. Officer Cassity assisted "by holding one shoulder down until [plaintiff] was in handcuffs." Cassity Decl. ¶ 6, ECF 32. Officer Saldivar claims he had no physical contact with plaintiff. Saldivar Decl. ¶ 6, ECF 33.

Sgt. Ko attests that plaintiff did not hit her head "at any time." Ko Decl. ¶ 11, ECF 30. After being handcuffed, officers sat plaintiff in a chair in the hotel lobby. *Id.* Plaintiff yelled at the officers "during the entire incident" and repeatedly threatened to take all of them to court. *Id.*

Thereafter, Sgt. Ko conducted a second interview of Tate who said he first thought plaintiff might have intended to give him a hug, but when the unwanted contact continued, he became increasingly concerned. *Id.* ¶ 12. Tate described that plaintiff began moving her hands around his torso, and although he did not interpret that contact as sexual in nature, he believed it might have be an inept attempt to pick-pocket him. *Id.* Tate said that plaintiff was not speaking to him during this incident, but eventually tried to explain that she was only attempting to plug in her cell phone to charge it. *Id.* However, given the plug was behind his seat and not in front of him (where plaintiff had grabbed him), Tate said that plaintiff's explanation made no sense. *Id.* Tate stated that plaintiff left his immediate area only after he picked up the phone to call hotel security. *Id.*

Sgt. Ko believed he had probable cause to arrest plaintiff for interfering with the duties of a police officer, based on plaintiff's attempt to leave the premises in disregard of his instructions to stay and her physical resistance to his efforts to detain her. Sgt. Ko Decl. ¶ 15, ECF 30.

O.R.S. 162.247 defines the crime of interfering with a police officer and provides in pertinent part:

> (1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181A.355:
> (a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person; or
> (b) Refuses to obey a lawful order by the peace officer or parole and probation officer.

O.R.S. 162.247(1).

There are disputed facts regarding whether plaintiff attempted to leave the scene and whether she resisted the officers' efforts to detain her. The officers claim that she did, and plaintiff claims that she did not. As the evidence must be viewed in plaintiff's favor, this factual dispute precludes the court from finding on summary judgment that there was probable cause for the crime of interfering with a police officer.

However, Sgt. Ko also believed he had probable cause to arrest plaintiff for the crime of harassment against Tate. Ko Decl. ¶ 15, ECF 30. Under O.R.S. 166.065(1)(a)(A), "[a] person commits the crime of harassment if the person intentionally . . . harasses or annoys another person by . . . subjecting such other person to offensive physical contact."

There are no disputed facts regarding whether Sgt. Ko had probable cause to arrest plaintiff for harassment. There is no dispute that Sgt. Ko received a call from dispatch that a female subject at Sheraton PDX had grabbed a hotel clerk behind his desk. Ko Decl. ¶ 3, ECF 30. There is no dispute that, in his initial report to Sgt. Ko, Tate said that plaintiff came around his desk and put her arms around him just above his belt line, and that when he challenged her conduct, she shrugged off his objections. *Id.* ¶ 5; *see State v. Higgins*, 165 Or. App. 442, 449 (2000) (offensive physical contact includes grabbing). There also is no dispute that Tate told

Sgt. Ko that he wanted plaintiff removed from the premises and appeared shaken up.  Ko Decl. ¶ 5, ECF 30.  "Under settled law, [the officers] are entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest [plaintiff]."  *Hunter*, 502 U.S. at 228. Here, such a belief was reasonable based on Tate's initial report regarding plaintiff's actions toward him.

Plaintiff claims that Tate lied to the police and that he was in fact the actual aggressor. Resp. Port Mot. Summ. J. 10, ECF 41.  But probable cause is based on "the facts and circumstances *within an officer's knowledge*" at the time.  *Act Up!/Portland*, 988 F.2d at 873 (emphasis added).  Probable cause may exist even if the arrestee is ultimately cleared of the charge.[2]  *See Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested."); *Marx v. Gumbinner*, 905 F.2d 1503, 1508 (11th Cir. 1990) ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself."); *Beverly v. Cty. of Los Angeles*, No. 2:12-CV-10874-ODW, 2014 WL 243252, at *6 (C.D. Cal. Jan. 21, 2014) (observing that, "[w]hile Beverly was ultimately cleared of the charge, the Deputies were only able to act upon the information they knew at the time-information that established a fair probability to believe that Beverly" had committed a crime).  Thus, "even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity."  *Hunter*, 502 U.S. at 227 (citation omitted).  An officer is entitled to qualified immunity "if he reasonably *believed* there to have been probable cause," which is what occurred in this case.  *Rosenbaum*, 663 F.3d at 1076 (emphasis in original).

---

[2] In this case, the District Attorney's Office ultimately declined prosecution.  ECF 42-4.

Plaintiff also argues that "Sgt. Ko's attempt to interview [her] was futile because he told her to shut up on several occasions and described her explanation as 'convoluted, irrelevant,' and 'rambling.'" Resp. Port Mot. Summ. J. 10, ECF 41. "In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). However, "[a] sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003) (quotations marks and citation omitted). Here, Tate provided sufficient details by explaining how plaintiff came around his desk, put her arms around him, with her hands just above his belt line, and shrugged off his objections to her conduct. Ko Decl. ¶ 5, ECF 30; *see also Pinckney v. City of San Jose*, No. C-08-04485 RMW, 2010 WL 94266, at *5 (N.D. Cal. Jan. 6, 2010) ("Although the officers may have been able to elicit a more complete picture of the situation by continuing their investigation or confronting plaintiff with Ms. Pinckney's statements, the probable cause inquiry deals only with the facts actually known to the officers."); *Nelson v. Inyo County Sheriffs Dep't*, No. 1:06cv0107 DLB, 2007 WL 2711399, at *4 (E.D.Cal. Sept. 14, 2007) (finding plaintiff's argument that he was not given "equal opportunity" to explain himself was "irrelevant to the probable cause determination").

In sum, there was probable cause that plaintiff committed the crime of harassment. Therefore, the officers are entitled to summary judgment on plaintiff's Fourth Amendment claim for unlawful arrest.

###### 4. Excessive Force

Plaintiff also contends the officers used excessive force in violation of the Fourth Amendment.  Resp. Port Mot. Summ. J. 8, ECF 41.  The officers first assert that plaintiff failed to allege an excessive force claim in her complaint.  Port Reply 6, ECF 49.  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In the Complaint, plaintiff alleges that the officers violated her "Fourth Amendment right to be secure in her person from *unreasonable seizure* . . . when they restrained [her] of her personal freedom and ability to move about freely."  First Am. Compl. ¶ 47, ECF 7 (emphasis added).  "Where, as here, [plaintiff] 'alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures.'"  *Thompson*, 885 F.3d at 586 (citation omitted); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("An objectively unreasonable use of force is constitutionally excessive and violates the Fourth Amendment's prohibition against unreasonable seizures.").  Thus, a claim for excessive force can be found in plaintiff's Fourth Amendment claim alleging an "unreasonable seizure."  Additionally, elsewhere in the Complaint, plaintiff asserts that the officers committed common law battery and assault.  Therefore, the complaint provides the officers with "fair notice" that plaintiff is alleging an excessive force claim against them.  *Bell*, 550 U.S. at 555.

Turning to the merits, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396

(1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates the Fourth Amendment." *Id.*; *see United States v. Alverez–*

*Tejeda,* 491 F.3d 1013, 1017 (9th Cir. 2007) ("While the police may not use *excessive* force in

conducting a search or seizure, the force here was minimal.") (emphasis in original); *Tuttelman*

*v. City Of San Jose*, 420 F. App'x 758, 763 (9th Cir. 2011) (finding a "*de minimis* use of force

cannot ground an *excessive* force claim under the Fourth Amendment") (emphasis in original).

> Thus, courts "approach an excessive force claim in three stages":

> First, we assess the severity of the intrusion on the individual's Fourth
> Amendment rights by evaluating the type and amount of force inflicted. Then, we
> evaluate the government's interests by assessing the severity of the crime;
> whether the suspect posed an immediate threat to the officers' or public's safety;
> and whether the suspect was resisting arrest or attempting to escape. Finally, we
> balance the gravity of the intrusion on the individual against the government's
> need for that intrusion.

*Thompson*, 885 F.3d at 586 (quotation marks and citation omitted). "[A]s the text of the Fourth

Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not

whether they had less intrusive alternatives available to them." *Scott v. Henrich*, 39 F.3d 912,

915 (9th Cir. 1994).

The court considers several factors in evaluating the strength of the government's interest

in the force used, including (1) "the severity of the crime at issue," (2) "whether the suspect

poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect]

is actively resisting arrest or attempting to evade arrest by flight." *Estate of Lopez by & through*

*Lopez v. Gelhaus*, 871 F.3d 998, 1005–06 (9th Cir. 2017) (citing *Graham v. Connor*, 490 U.S.

386 (1989)). The most important factor is whether the suspect posed an immediate threat to the

safety of the officers or others. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). These

factors are non-exhaustive. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). The court

examines the totality of the circumstances and considers whatever specific factors may be appropriate in a particular case. *Id.*

Plaintiff attests that she was merely placing her cell phone in her purse when she was "immediately grabbed and slammed to the ground by two police officers with two other police officers helping." Pl. Decl. ¶ 10, ECF 30. Plaintiff claims that she hit her head when the officers took her to the ground, causing her to be become disoriented. *Id.* She also suffered bruises throughout her body. *Id.* ¶ 12. Plaintiff claims she "never tried to leave," and denies resisting or struggling with the officers. *Id.* ¶¶ 9, 10. Viewing the evidence in the light most favorable to the plaintiff, as this court must, there are genuine issues of material fact regarding whether plaintiff posed an immediate threat to the officers' or public's safety, whether she was resisting or attempting to escape, how much force was used, and the officers' need to use such force.

Factual disputes similarly preclude summary judgment on qualified immunity. Where factual "disputes exist, summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). Here, when the facts alleged by plaintiff are accepted as true, the "body of relevant case law," *Emmons*, 139 S.Ct. at 504, makes the unconstitutionality of the officers' alleged actions in this case "beyond debate." *al-Kidd*, 563 U.S. at 741.

In 2007, the Ninth Circuit decided *Blankenhorn v. City of Orange*, a case in which three officers "gang-tackled" the plaintiff during his arrest for trespass. 485 F.3d 463 (9th Cir. 2007). The officers observed Blankenhorn in a shopping mall "talking casually with a friend" and knew he had been permanently banned from the location. *Id.* at 467, 478. The officers also knew Blankenhorn was a gang member with a robbery conviction. *Id.* at 468. Blankenhorn admitted

that before the officers took him into custody, he was "angry" and "loud," used profanity, and threw his license on the ground. *Id.* at 469. He also admitted that he "yanked out of [the officer's] grasp" and refused to kneel to be handcuffed, saying, "I'm not going to my f***ing knees." *Id.*

The Ninth Circuit initially recognized that "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." *Id.* at 477. However, the court observed that in Blankenhorn's case, the three officers "[a]lmost immediately . . . gang-tackled" him, no officer had first tried to handcuff him, and Blankenhorn did not actively resist being handcuffed before the officers gang-tackled him. *Id.* at 478, 479. The court held that, given the "minimal" severity of the misdemeanor trespass, the fact that Blankenhorn had been cooperative during a separate encounter with one of the officers just three weeks before, and video footage of the incident showing Blankenhorn "did not pose a serious threat to the officers' or others' safety," a "rational jury could find that the use of a gang tackle by [the three officers] under these circumstances was unreasonable." *Id.* at 478-79. The court also found that because the law was clearly established at the time, the officers were not entitled to qualified immunity:

> In assessing the state of the law at the time of Blankenhorn's arrest, we need look no further than *Graham*'s holding that force is only justified when there is a need for force. We conclude that this clear principle would have put a prudent officer on notice that gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect—especially one who had been cooperative in the past and was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights.

*Id.* at 481.[3]

---

[3] While the Ninth Circuit relied on *Graham* here, it is important to remember that *Graham* does not by itself "create clearly established law outside 'an obvious case.'" *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 199 (2004) (*per curiam*)); *see also Brosseau*, 572 U.S. at 199 (observing that *Graham* is "cast at a high level of generality").

Before *Blankenhorn*, the Ninth Circuit had decided *Meridith v. Erath*, a case in which officers were executing a search warrant for tax fraud, "which (although felonies) are nonviolent offenses."  324 F.3d 1057, 1061 (9th Cir. 2003).  When the plaintiff repeatedly asked to see the warrant, an officer forcibly threw her to the ground and twisted her arms while placing handcuffs on her wrists, causing her to suffer extensive bruising.  *Id.* at 1060.  The Ninth Circuit held it was clearly established in 1998, when the incident occurred, that the amount of force the plaintiff claimed the officer used was excessive and a reasonable officer would have known such conduct violated the Fourth Amendment.  *Id.* at 1061 (citing *Hansen v. Black,* 885 F.2d 642, 645 (9th Cir. 1989) ("[T]he officers used excess force on Hansen by unreasonably injuring her wrist and arm as they handcuffed her.")).  Additionally, in *Winterrowd*, decided in 2007, the Ninth Circuit held that where the plaintiff's "objections were entirely verbal" during a traffic stop, and the plaintiff "pose[d] no physical danger," "[n]o reasonable officer would have believe he could constitutionally force a harmless motorist against the hood of a car and cause him unnecessary pain."  480 F.3d at 1185, 1186.

Here, plaintiff was suspected of committing a crime of "minimal" severity, i.e., harassment, a class B misdemeanor.  *See* O.R.S. 166.065(3).  While the crime of harassment involves an element of "offensive physical contact," it requires no physical injury, and the officers had no information that plaintiff, who was five feet tall, had acted violently toward Tate or anyone else.  Edison Decl., Ex. A, ECF 40-1.  Yet, assuming plaintiff's version of the events is true, four officers "grabbed and slammed" her to the ground, even though she was not trying to leave or resist arrest, causing her to hit her head and suffer bruises on her arm, face, shoulder, leg, and ankle.  Pl. Decl. ¶¶ 10, 12, ECF 39.  Based on the body of case law described above, the contours of the law were sufficiently definite that any reasonable officer would have known that

the use of such force under those circumstances was excessive.[4] *Kisela*, 138 S.Ct. at 1153 (2018).

The officers argue that plaintiff has "not denied that she resisted the officers' attempts to place her under arrest *prior to* the officers taking her to the ground" but "[r]ather, in her declaration she states that she did not resist '[w]hile on the ground[.]'" Port Reply 7, ECF 49 (emphasis and alterations in original).  The officers contend "[t]hat is *not* a denial of the officers' statements that [plaintiff] resisted their efforts to handcuff her." *Id.* (emphasis in original).  However, on summary judgment, the evidence must be viewed in the light most favorable to plaintiff and all reasonable inferences must be drawn in her favor.  Plaintiff attests that she placed her cell phone in her purse and the officers "immediately" grabbed her and slammed her to the ground.  Pl. Decl. ¶ 10, ECF 39.  A reasonable inference from this testimony is that plaintiff did not have the opportunity to resist before she was taken to the ground.

Finally, Sgt. Hepp, Officer Cassity, and Officer Saldivar argue that summary judgment should be granted in their favor because "the arrest decision was made by Sgt. Ko" and plaintiff cannot establish that they personally participated in the allegedly unconstitutional arrest.  Port Mot. Summ. J. 12, ECF 28.  However, on summary judgment, the evidence must be viewed in plaintiff's favor, and plaintiff declares that she was "grabbed and slammed on the ground by two

---

[4] The Ninth Circuit's unpublished decision in *Saetrum v. Vogt*, 673 F. App'x 688, 691 (9th Cir. 2016), is distinguishable on its facts.  There, a single officer executed a "hands-on takedown" of an individual who was being arrested for delivery of marijuana, causing him to suffer a concussion.  The court held that, "even assuming the takedown involved an unreasonable application of force, the contours of the law were not sufficiently clear to put any reasonable officer on notice that tackling Saetrum would violate the Constitution." *Id.* at 691.  The court distinguished Ninth Circuit precedent, including *Blankenhorn*, because those cases "involved greater force and weaker justification." *Id.*

police officers with two other police officers helping," i.e., that all four officers personally participated in the unconstitutional use of force  Pl. Decl. ¶ 10, ECF 39.

For the forgoing reasons, genuine issues of fact preclude summary judgment on plaintiff's claim that the officers used excessive force.

### B.     Common Law False Arrest (Fourth Claim, Count 1)

Plaintiff alleges a common law claim of false arrest against the Port.  First Am. Compl. ¶¶ 41-42, ECF 7.  The parties agree that the existence of probable cause is a defense to such a claim.  *See Bacon v. City of Tigard*, 81 Or. App. 147, 150 (1986) ("The imprisonment could not be 'false' if there was *any* 'true' reason for it.") (emphasis in original).

Here, as discussed at length above, there was probable cause to arrest plaintiff. Therefore, the Port is entitled to summary judgment on the common law claim of false arrest.

### C.     Common Law Battery and Assault (Second and Third Claims)

In claims two and three, plaintiff alleges claims of common law battery and assault against the Port, "by and through its employees."  First Am. Compl. ¶¶ 34-39, ECF 7.

A "battery" is a "voluntary act that is intended to cause the resulting harmful or offensive contact."  *Walthers v. Gossett*, 148 Or. App. 548, 552 (1997).  "[T]he conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof.  It is not necessary that the contact do actual physical harm—it is sufficient if the contact is offensive or insulting."  *Johnson v. Jones*, 269 Or. App. 12, 17 (2015) (quoting *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976)).

Assault is defined as "an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect."  *Bollaert v. Witter*, 101 Or. App.

654, 658 (1990) (quoting *Cook v. Kinzua Pine Mills Co. et al.*, 207 Or. 34, 47-48 (1956)).

Statements "without some overt act, do not support a claim for assault." *Id.* Otherwise stated,

"[m]ere words, no matter how violent, do not amount to an assault." *Id.* (citing Restatement

(Second) Torts § 31 (1965)).

The Port argues that summary judgment must be granted on these claims because the

officers did not use excessive force in arresting plaintiff. Port Mot. Summ. J. 7, ECF 28.

"[O]nly excessive force by a police officer carrying out an arrest can give rise to civil liability for

battery." *Gregory v. City of Newberg*, No. 3:15-CV-00473-BR, 2015 WL 5577755, at *7 (D. Or.

Sep. 21, 2015). "A police officer has a complete defense to civil liability for assault or battery if

the officer used force as authorized by statute." *Wagoner v. City of Portland*, No. 3:14-cv-2063-

AC, 2017 WL 2369399, at *10 (citing *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763

(1975)).

For the statutory authority, the Port points to O.R.S. 161.235(1),[5] which provides that "a

peace officer is justified in using physical force upon another person only when and to the extent

that the peace officer reasonably believes it necessary . . . [t]o make an arrest or to prevent the

escape from custody of an arrested person unless the peace officer knows that the arrest is

unlawful." "ORS 161.235 is a full defense to the battery claim." *Mateo v. City of Portland*, No.

3:13-CV-00180-KI, 2014 WL 4384595, at *6 (D. Or. Sept. 3, 2014). "Survival of the battery

claim depends on the reasonableness of [the officer's] belief that the physical force used on [the

arrestee] was necessary." *Elkins v. Washington Cty.*, No. CIV 06-448-ST, 2007 WL 1342155, at

*16 (D. Or. May 3, 2007). "[A] police officer is presumed to be acting in good faith in

---

[5] The Port actually cites O.R.S. 161.239, which pertains to deadly force. Port Mot. Summary J. 7, ECF 28. Presumably, it meant O.R.S. 161.235.

determining the amount of force necessary to make the arrest." *Ballard v. City of Albany*, 221 Or. App. 630, 641 (2008) (*Rich v. Cooper,* 234 Or. 300, 309 (1963)).

In *Ballard v. City of Albany*, the plaintiff claimed officers used excessive force when they deployed a police dog against him. 221 Or. App. at 642-43. The officers, on the other hand, claimed it was necessary to use the dog to remove the plaintiff from his car. *Id.* Recognizing its job was not to weigh the evidence, but to view it in the light most favorable to plaintiff, the Oregon Court of Appeals held that "whether the evidence established that excessive force was used in arresting plaintiff is for the jury to decide." *Id.* at 643.

The same is the case here. The officers offer a different version of the facts than plaintiff. However, as *Ballard* instructs, this court does not weigh the evidence and must view the evidence in the light most favorable to plaintiff. Because there is a factual dispute regarding whether the officers used excessive force, summary judgment must be denied as to the battery and assault claims against the Port.

## V.    Hotel's Motion for Summary Judgment (ECF 34)

Plaintiff alleges that the hotel, by and through its employees and agents, are liable for common law assault and defamation (Ninth and Tenth Claims). Tate passed away since the incident, and is not an individually named defendant in the complaint. Conner Decl. ¶ 6, ECF 35.

### A.    Assault

The hotel argues that summary judgment must be granted on the assault claim because there is no evidence that Tate assaulted plaintiff. Pollin Hotels II Mot. Summ. J. 9, ECF 34. Again, an assault is defined as "an intentional attempt to do violence to the person of another

coupled with present ability to carry the intention into effect." *Bollaert*, 101 Or. App. at 658

(citation omitted).

In her response to the motion for summary judgment, plaintiff describes Tate's alleged

assault as follows:

> [Plaintiff] alleges that after she attempted to place her plug into the charger, Mr.
> Tate began to yell and act in a violent manner.  Decl of Pl., ¶ 6.  *Mr. Tate threw
> Ms. Aguirre's phone at her* and continued to yell at her, placing her in fear of
> bodily harm and injury.  Decl of Pl., ¶ 7.  Based on Mr. Tate's conduct, Ms.
> Aguirre believed that she was going to be injury [*sic*] to the point where she asked
> [the customer service representative on the telephone] to call the police on her
> behalf. Decl of Pl., ¶¶ 7-8.  Mr. Tate attempted to cause Ms. Aguirre injury and
> placed her in fear of bodily harm when he threw her phone while yelling.

Resp. Pollin Hotels II Mot. Summ. J. 7, ECF 38 (emphasis added).

This characterization is different from plaintiff's declaration, in which she does not

allege that Tate threw the phone at her or in her direction:

> 6.       Maria confirmed my reservation and I asked her if she was able to speak
>          with Mr. Tate. She agreed as I unplugged my phone and began to walk
>          back to the concierge desk. I handed the phone to Mr. Tate, with the
>          charger and plug still attached. The plug fell to the ground once I handed
>          the phone to Mr. Tate and I attempted to pick up the charger plug to place
>          it in an outlet. Mr. Tate reacted in a violent and sudden manner.
>
> 7.       At that point, Mr. Tate *threw my phone* and began to yell at me. Following
>          his reaction, I feared for my safety and asked Maria to call the police on
>          my behalf. I did not touch Mr. Tate inappropriately or do anything to place
>          him in fear of physical bodily injury/harm. During the entire interaction
>          with Mr. Tate, I was on the phone with the booking agent "Maria."

Pl. Decl. ¶¶ 6, 7, ECF 39 (emphasis added).  In fact, elsewhere in plaintiff's response to the

hotel's motion for summary judgment, she states that "Mr. Tate then reacted negatively by

screaming at Ms. Aguirre and *throwing her phone across the lobby*."  Resp. Pollin Hotels II Mot.

Summ. J 4, ECF 38 (emphasis added) (citing Pl. Decl. ¶¶ 6-7).  Finally, in her deposition,

plaintiff testified that Tate "jump and scream and throw my phone away," and "he threw it

away," but did not testify that Tate threw the phone at her.  Pl. Dep. 112, 115, ECF 35-2.

The record contains no evidence that Tate attempted to "do violence" to plaintiff by

throwing her phone at her or otherwise.  *Bollaert*, 101 Or. App. at 658.  While there is

evidence that Tate yelled and screamed, "[m]ere words, no matter how violent, do not amount to

an assault."  *Id.*  As there is no evidence to support plaintiff's assault claim against the hotel,

it must be dismissed on summary judgment.

### B.    Privileged Statements to Police

In her claim of defamation, plaintiff alleges that Tate "made false and defamatory

statements" about her to the officers.  First. Am. Compl. ¶ 53, ECF 6.  Defendant asserts that the

statements are protected by the qualified privilege for statements made to police.

Statements made to police before the initiation of criminal proceedings enjoy a qualified

privilege.  *DeLung v. Yu Enterprises, Inc.*, 334 Or. 166, 174 (2002).  A person making informal

statements to police does not enjoy blanket immunity from an action but instead receives

"protection only if [the statements] were made in good faith."[6]  *Id.* at 173.  "To overcome a

qualified privilege, a plaintiff must "'prove that a defendant acted with actual malice[.]'"

*Gordon v. Kleinfelder W., Inc.*, No. 03:11-CV-00245-HU, 2012 WL 844200, at *6 (D. Or. Mar.

12, 2012) (quoting *Christianson v. State,* 239 Or. App. 451, 459 (2010)); *see also Johnson v.

Brown*, 193 Or. App. 375, 380, *decision clarified on reconsideration,* 194 Or. App. 486 (2004)

("The defense of qualified privilege can be overcome if the alleged defamatory statements were

made in bad faith or with malice.").  Also, "[i]t must be borne in mind . . . that it is for the court,

---

[6] It is a qualified privilege, rather than an absolute privilege, to "discourage an abuse of the
privilege."  *DeLung*, 334 Or. at 173.

and not the jury, to decide where the line is to be drawn between a protected and an unprotected defamatory publication." *Id.* (quoting *Post v. Oregonian Pub. Co.,* 268 Or. 214, 222 (1974)).

Plaintiff contends that Tate was the "initial aggressor." Pl. Decl. ¶¶ 6-7, ECF 39. The hotel disputes this characterization. Pollin Hotels II Reply 9, ECF 48. Nevertheless, on summary judgment, the court must view the evidence in the light most favorable to plaintiff. Plaintiff attests that Tate "reacted in a violent and sudden manner," threw her phone, and began to yell at her. Pl. Decl. ¶¶ 6-7. Assuming plaintiff's testimony is true, a reasonable inference may be drawn that when the police arrived, Tate fabricated his statement about what had actually occurred. Thus, there is a genuine issue of material fact on the question of whether qualified privilege applies.

### C.    Acting Within Scope of Employment

Finally, the hotel contends there is no evidence that Tate was acting within the scope of his employment when he committed the allegedly tortious acts. It is unnecessary to reach this issue on the claim of assault because, as discussed above, there is no evidence that Tate committed an assault.

Regarding plaintiff's claim of defamation, the court considers three elements in determining whether Tate's conduct occurred within the scope of his employment: (1) the conduct must have occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act must have been of a kind that the employee was hired to perform. *Chesterman v. Barmon,* 305 Or. 439, 442 (1988). "The scope of employment limitation is designed to ensure that employers will be held liable only for harm resulting from activity from which they were receiving the benefit." *Stanfield v. Laccoarce,* 284 Or. 651, 655 (1978).

"'[T]he ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed.'" *Id.* (quoting Restatement (Second) of Agency § 229, Comment a (1958)). "Consequently, [the Oregon Supreme Court has] held that the question of whether or not an employee has acted within the scope of his employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts." *Id.*

> The hotel contends:
>
> [T]here is no evidence that Mr. Tate was acting within the course and scope of his employment because there is no evidence of Mr. Tate's job responsibilities; no evidence that his job responsibilities included "sreaming," frightening, or threatening the public; and no evidence that his job responsibilities included making allegedly false and defamatory statements regarding person crimes committed against him as an individual.

Pollin Hotels II Mot. Summ. J. 9, ECF 34.  Plaintiff argues that Tate was "acting within the course and scope of his employment when he assaulted and defamed her," and "was acting on Sheraton PDX's behalf by calling the police to have [plaintiff] arrested" and "as an employee" when he attempted to "remove [her] from the Sheraton property."  Resp. Pollin Hotels II Mot. Summ. J. 6, ECF 38.

As Tate is deceased, the record contains no testimony from him regarding his job responsibilities.  Nor is there testimony by a supervisor or co-worker, or a detailed job announcement or description of Tate's duties.  However, the evidence does show that Tate was a "hotel clerk" who was working the "front desk" in the lobby and that part of his job was to help individuals, such as plaintiff, with their hotel reservations.  Ko Decl. ¶¶ 4, 5, ECF 30; Edison Decl., Ex. A, at 3, ECF 40-1.

There is also evidence that, as the front desk clerk, it was within Tate's authority to instruct unwanted persons to leave the hotel. *See* Edison Decl., Ex. A, at 3, ECF 40-1 ("I . . . told her it was time for her to leave."); Conner Decl., Ex. D, at 1, ECF 35-4 ("Sean is telling Ms. Aguirre she has to leave."). When Tate made his allegedly false report to the police that plaintiff had harassed him, he said "he wanted [plaintiff] removed from the hotel premises." Ko Decl. ¶ 5, ECF 43-3.

In short, the evidence does not "require the conclusion that [Tate's] motive to protect the business had been supplanted by purely personal motives," and "[t]hus, the record is not so complete and unequivocal as to support only one reasonable conclusion." *Jones v. Herr*, 39 Or. App. 937, 946 (1979) (finding there was a question of fact regarding whether defendant's employees injured plaintiff's head for purposes of getting her to leave the premises or in the scope of protecting the property). Because there is a genuine issue of material fact regarding whether Tate was acting in the scope of his employment, summary judgment cannot be granted on that issue.

## RECOMMENDATIONS

The Port of Portland's Motion for Summary Judgment (ECF 28) should be granted as to the claims for negligence (First Claim), negligent false arrest (Fourth Claim, Count Two), Fourth Amendment unlawful arrest (Fifth, Sixth, Seventh, and Eighth Claims, in part), and common law false arrest (Fourth Claim, Count 1), and denied as to the claims for Fourth Amendment excessive force (Fifth, Sixth, Seventh, and Eighth Claims, in part) and common law battery and assault (Second and Third Claims).

Pollin Hotels II's Motion for Summary Judgment (ECF 34) should be granted on the assault claim (Ninth Claim) and denied on the defamation claim (Tenth Claim).

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Tuesday, March 02, 2021.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  February 16, 2021.


_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge